UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

HOWARD COHAN,

     Plaintiff,

vs.

                          INJUNCTIVE RELIEF SOUGHT

POMPANO NO. 88, INC.,
d/b/a MOBIL,

     Defendant.

_____/

## COMPLAINT

Plaintiff, HOWARD COHAN ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint and sues POMPANO NO. 88, INC. d/b/a MOBIL ("Defendant"), for breach of contract, declaratory and injunctive relief, attorneys' fees, expenses and costs (including, but not limited to, court costs and expert fees) pursuant to 42 U.S.C. § 12182 et. seq., and the 2010 Americans with Disabilities Act ("ADA") and alleges as follows:

### JURISDICTION AND VENUE

1.      This is a complaint for breach of contract and injunctive relief seeking enforcement of the Settlement Agreement and Release (a copy of same is attached as Exhibit "A") reached in the case of HOWARD COHAN v. POMPANO NO. 88, INC., 16-61979- ZLOCH (S.D. Fla.) ("Prior Action").

2.      The Prior Action arose out of Plaintiff's claims of discrimination caused by specific barriers encountered by Plaintiff at Defendant's real property located at 880 S. Federal Highway, Pompano Beach, Florida 33062 ("Premises") that prevented Plaintiff from the full and equal enjoyment of a place of public accommodation in violation of Title III of the Americans with Disabilities Act ("ADA").

1

3.      This Court is vested with original jurisdiction over this action pursuant to 28 U.S.C. §1331 for Plaintiff's claims arising under Title 42 U.S.C. §12182 et. seq., based on Defendant's violations of Title III of the ADA. *See also* 28 U.S.C. §§2201 and 2202 as well as the 2010 ADA Standards.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(B) and Internal Operating Procedures for the United States District Court for the Southern District of Florida in that all events giving rise to the lawsuit occurred in the United States Southern District of Florida.

## PARTIES

5.      Plaintiff, HOWARD COHAN is *sui juris* and is a resident of the State of Florida residing in Palm Beach County, Florida.

6.      Upon information and belief, Defendant is the lessee, operator, owner and lessor of the Premises, and is the owner of the improvements where the Premises is located.

7.      Defendant is authorized to conduct, and is in fact conducting, business within the state of Florida.

8.      Plaintiff is an individual with numerous permanent disabilities including severe spinal stenosis of the lumbar spine with spondylolisthesis; severe spinal stenosis of the cervical spine with nerve root compromise on the right side; a non-union fracture of the left acromion (shoulder); a labral tear of the left shoulder; a full thickness tear of the right rotator cuff; a right knee medial meniscal tear; a repaired ACL and bilateral meniscal tear of the left knee; and severe basal joint arthritis of the left thumb. The above listed permanent disabilities and symptoms cause sudden onsets of severe pain and substantially limit Plaintiff's major life activities. As such, Plaintiff suffered from a "qualified disability" under the ADA. 42 U.S.C § 12101, *et seq.*

9.      On May 25, 2016, Plaintiff visited the Premises. At the time of Plaintiff's visit to the Premises, Plaintiff required the use of fully accessible restrooms. Plaintiff personally visited the Premises, but was denied full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within Mobil, even though he was a "bona fide patron".

10.     Defendant's Premises is a place of public accommodation as defined by Title III of the ADA and as such is governed by the ADA.

11.     On August 17, 2016, Plaintiff filed the Prior Action seeking judicial intervention to have Defendant comply with the ADA and applicable regulations thereto. *See* Prior Action.

12.     On or about January 6, 2017, Plaintiff and Defendant entered into a Confidential Settlement Agreement and Release (Exhibit "A") that required Defendant to complete all modifications to the Premises within six (6) months of the date of the Confidential Settlement Agreement and Release ("Agreement"), to wit: July 6, 2017.

13.     In connection with said Agreement, on or about January 9, 2017, Plaintiff and Defendant (collectively "Parties") filed a Stipulation for Dismissal with Prejudice of the Prior Action. *See* Prior Action [D.E. 20]

14.     An Order dismissing the Prior Action was entered by the Court on January 13, 2017. *See* Prior Action [D.E. 21]

15.     On or about November 15, 2018, Plaintiff returned to the Premises and discovered that Defendant failed to complete the modifications to the Premises as required under the ADA and the Agreement, and Defendant failed to give notice of any reasons or documentation for non-compliance.

16.     Plaintiff required the use of fully accessible restrooms.

17.     Plaintiff was denied full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within the Premises even though he was a "bona fide patron".

18.     Plaintiff, in his individual capacity, has shown that he will absolutely return to the Premises and avail himself of the services offered when Defendant modifies the Premises or modifies the policies and practices to accommodate individuals who have physical disabilities.

19.     Plaintiff is continuously aware of the violations at Defendant's Premises and is aware that it would be a futile gesture to return to the Premises as long as those violations exist, and Plaintiff is not willing to suffer additional discrimination.

20.     Plaintiff has suffered, and will continue to suffer, direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA.

21.     Plaintiff would like to be able to be a patron of the Premises in the future and be able to enjoy the goods and services that are available to the able-bodied public, but is currently precluded from doing so as a result of Defendant's discriminatory conduct as described herein. Plaintiff will continue to be precluded from using the Premises until corrective measures are taken at the Premises to eliminate the discrimination against persons with physical disabilities.

22.     Completely independent of the personal desire to have access to this place of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering and engaging discrimination against the disabled in public accommodations. When acting as a "tester", Plaintiff employs a routine practice. Plaintiff personally visits the public accommodation; engages all of the barriers to access, or at least of those that Plaintiff is able to access; tests all of those barriers to access to determine whether and

the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to said premises to verify compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do.  Independent of other subsequent visits, Plaintiff also intends to visit the Premises regularly to verify its compliance or non-compliance with the ADA, and its maintenance of the accessible features of Premises. In this instance, Plaintiff, in Plaintiff's individual capacity and as a "tester", visited Premises, encountered barriers to access at Premises, and engaged and tested those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access and the ADA violations set forth herein.  It is Plaintiff's belief that said violations will not be corrected without Court intervention, and thus Plaintiff will suffer legal harm and injury in the near future.

23.     Plaintiff, in his capacity as a tester, will absolutely return to the Premises when Defendant modifies the Premises or modifies the policies and practices to accommodate individuals who have physical disabilities to confirm said modifications have been completed in accordance with the requirements of the ADA.

24.     All conditions precedent have occurred, been satisfied or been waived.

**COUNT I
BREACH OF CONTRACT**

25.     Plaintiff adopts and re-alleges the allegations stated in paragraphs 1 through 24 above as if fully stated herein.

26.     On or about January 6, 2017, the Parties entered into the Agreement. *See* Agreement attached hereto as Exhibit "A".

27.     As a result of the Agreement, Defendant agreed to make modifications to Defendant's Premises as outlined in the Agreement.

5

28.     The Agreement required Defendant to complete all modifications to the Premises within six (6) months of the Agreement, to wit: on or before July 6, 2017.

29.     Plaintiff has performed all conditions precedent to be performed by him under the Agreement.

30.     Pursuant to the Notice provision of the Agreement:

> **"In the event Defendant has not complied with the mandates of this paragraph 1, Plaintiff's expert will provide Notice of non-compliance in writing to Defendant's Counsel, Edward S. Polk, Esq., at his email address of Edward.Polk@csklegal.com giving Defendant an additional sixty (60) days to cure, subject to a re-inspection."**

31.     In compliance with the terms set forth in the Agreement, on or about March 15, 2019 counsel for Plaintiff sent Notice of Non-Compliance ("Notice") via email to counsel for Defendant, Edward S. Polk, Esq., which is attached hereto as Exhibit "B".  Counsel for Defendant advised counsel for Plaintiff that counsel for Defendant would forward the Notice to his client.  As of today, no response to the Notice has been received.

32.     On May 16, 2019, Plaintiff once again returned to the Premises and confirmed that Defendant has still failed to complete the modifications required by the Agreement. Specifically, Defendant failed to address the following violations at the Premises:

**Unisex Restroom**

a. Providing a gate or door with a continuous opening pressure of greater than 5 lbs. exceeding the limits for a person with a disability in violation of 2010 ADAAG §§404, 404.1, 404.2, 404.2.9 and 309.4 and/or §4.13.11 of the 1991 ADA Standards.

b. Providing grab bars of improper horizontal length or spacing on the back or side wall in violation of 2010 ADAAG §§604, 604.5, 604.5.1, 604.5.2, 609 and 609.4 and/or §§4.26 and 4.26.2 of the 1991 ADA Standards.

c. Failing to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG §§604, 604.7 and 309.4 and/or §4.16.6 of the 1991 ADA Standards.

d. Failing to provide a coat hook within the proper reach ranges for a person with a disability in violation of 2010 ADAAG §§603, 603.4 and 308 and/or §§4.25.3, 4.2.5 and 4.1.3 of the 1991 ADA Standards.

e. Failing to provide the water closet in the proper position relative to the side wall or partition in violation of 2010 ADAAG §§604 and 604.2 and/or §§4.16, 4.17.2 and 4.17.3 of the 1991 ADA Standards.

33. Plaintiff has been damaged by Defendant's breach of the Agreement. Specifically, Plaintiff has had to retain the services of the undersigned counsel to pursue this action for breach of contract.

34. Pursuant to paragraph 13 of the Agreement, should either party (Plaintiff or Defendant) institute litigation related to the Agreement, the prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment against Defendant and requests the following injunctive and declaratory relief:

1. That this Court declare that Defendant has failed to comply with the Agreement;

2.   That this Court enter an Order requiring Defendant to alter the Premises to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;

3.   That this Court award reasonable attorneys' fees, all costs (including, but not limited to court costs and expert fees) and other expenses of this lawsuit to Plaintiff as provided in the Agreement; and

4.   That this Court award such other and further relief as it may deem necessary, just and proper.

## COUNT II
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

35.   Plaintiff adopts and re-alleges the allegations stated in paragraphs 1 through 24 above as if fully stated herein.

36.   On July 26, 1990, Congress enacted the ADA, 42 U.S.C. §12101 et. seq. Commercial enterprises were provided one and a half (1.5) years from enactment of the statute to implement its requirements.  The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if Defendant has ten (10) or fewer employees and gross receipts of $500,000.00 or less. *See* 42 U.S.C. §12182; *see also* 28 C.F.R. §36.508(a).

37.   Congress found, among other things, that:

a.   some 43,000,000 Americans have one or more physical or mental disabilities, and this number shall increase as the population continues to grow older;

b.   historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem, requiring serious attention;

8

     c.   discrimination against disabled individuals persists in such critical areas as employment, housing, public accommodations, transportation, communication, recreation, institutionalization, health services, voting and access to public services and public facilities;

     d.   individuals with disabilities continually suffer forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, benefits, or other opportunities; and

     e.   the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. §12101(a)(1)-(3),(5) and (9).

38.    Congress explicitly stated that the purpose of the ADA was to:

     a.   provide a clear and comprehensive national mandate for elimination of discrimination against individuals with disabilities;

     b.   provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

> c.   invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily basis by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4).

39.     Pursuant to 42 U.S.C. §12182(7), 28 CFR §36.104 and the 2010 ADA Standards, Defendant's Premises is a place of public accommodation covered by the ADA by the fact it provides services to the general public and must be in compliance therewith.

40.     Defendant has discriminated, and continues to discriminate against Plaintiff and others who are similarly situated by denying access to and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations located at the Premises, as prohibited by 42 U.S.C. §12182, and 42 U.S.C. §12101 et. seq., and by failing to remove architectural barriers pursuant to 42 U.S.C. §12182(b)(2)(A)(iv).

41.     Plaintiff has visited the Premises and has been denied full and safe equal access to the facilities, and therefore suffered an injury in fact.

42.     Defendant's policies, practices, procedures and/or lack of training its staff to efficiently and effectively identify and reasonably modify its services creates an environment where individuals with disabilities are not provided goods and services in the most integrated way possible.

43.     Plaintiff will return to the Premises in the near future and enjoy the goods, services, facilities, privileges, advantages and/or accommodations at the Premises on a planned, or a spontaneous, full and equal basis. However, Plaintiff is precluded from doing so by Defendant's failure and refusal to provide persons with disabilities with full and equal access to its facilities at

the Premises. Therefore, Plaintiff continues to suffer from discrimination and injury due to the architectural barriers that are in violation of the ADA.

44.     Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General promulgated Federal Regulations to implement the requirements of the ADA. *See* 28 CFR §36 and its successor the 2010 ADA Accessibility Guidelines (hereinafter referred to as "ADAAG"), 28 C.F.R. Part 36, under which said Department may obtain civil penalties of up to $55,000.00 for the first violation and $110,000.00 for each subsequent violation.[1]

45.     Based on a preliminary inspection of the Premises, Defendant is in violation of 42 U.S.C. §12182 et. seq. and the 2010 ADA Standards et. seq., and is discriminating against Plaintiff as a result of, *inter alia*, the following specific violations found in the Unisex Restroom:

     a.   Failing to provide the proper spacing between a grab bar and an object projecting out of the wall in violation of 2010 ADAAG §§604, 604.5, 604.5.1, 604.5.2, 609, 609.3 and 609.4 and/or §§4.16.4, 4.26 and 4.26.2 of the 1991 ADA Standards.

     b.   Providing a gate or door with a continuous opening pressure of greater than 5 lbs. exceeding the limits for a person with a disability in violation of 2010 ADAAG §§404, 404.1, 404.2, 404.2.9 and 309.4 and/or §4.13.11 of the 1991 ADA Standards.

     c.   Providing grab bars of improper horizontal length or spacing on the back or side wall in violation of 2010 ADAAG §§604, 604.5, 604.5.1, 604.5.2, 609 and 609.4 and/or §§4.26 and 4.26.2 of the 1991 ADA Standards.

---

[1] Effective April 1, 2014 the civil penalties were increased, based on inflation, from $55,000.00 to $75,000.00 for the first violation and from $110,000.00 to $150,000.00 for subsequent violations. *See* 28 C.F.R. §§36 and 85.

d. Failing to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG §§604, 604.7 and 309.4 and/or §4.16.6 of the 1991 ADA Standards.

e. Failing to provide a coat hook within the proper reach ranges for a person with a disability in violation of 2010 ADAAG §§603, 603.4 and 308 and/or §§4.25.3, 4.2.5 and 4.1.3 of the 1991 ADA Standards.

f. Failing to provide the water closet in the proper position relative to the side wall or partition in violation of 2010 ADAAG §§604 and 604.2 and/or §§4.16, 4.17.2 and 4.17.3 of the 1991 ADA Standards.

46.     To the best of Plaintiff's belief and knowledge, at the time of filing this lawsuit Defendant has failed to eliminate the specific violations set forth in paragraph 45 above.

47.     Although Defendant is charged with having knowledge of the violations, Defendant may not have had actual knowledge of said violations until this Complaint made Defendant aware of same.

48.     To date, the readily achievable barrier and violation of the ADA still exists and has not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

49.     As the owner, lessor, lessee or operator of the Premises, Defendant is required to comply with the ADA. To the extent the Premises, or portions thereof, existed and were occupied prior to January 26, 1992, the owner, lessor, lessee or operator has been under a continuing obligation to remove architectural barriers at the Premises where removal was readily achievable, as required by 28 C.F.R. §36.402.

50.     To the extent the Premises, or portions thereof, were constructed for occupancy after January 26, 1993 the owner, lessor, lessee or operator of the Premises was under an obligation to design and construct such Premises such that it is readily accessible to and usable by individuals with disabilities, as required by 28 C.F.R. §36.401.

51.     Pursuant to the ADA, 42 U.S.C. §12101 et. seq., and 28 CFR §36.304, Defendant was required to make the Premises, a place of public accommodation, accessible to persons with disabilities by January 28, 1992. As of the date of the filing of this Complaint, Defendant has failed to comply with this mandate.

52.     Plaintiff has retained undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorneys' fees, costs and expenses paid by Defendant, pursuant to 42 U.S.C. §12205.

53.     The violations alleged in paragraph 45 above is readily achievable to modify in order to bring the Premises or the Facility/Property into compliance with the ADA.

54.     In the instances where the 2010 ADAAG Standards do not apply to the violations listed in paragraph 45 above, the 1991 ADA Standards apply.

55.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including entering an Order to alter the Premises to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA and closing the Premises until the requisite modifications are completed.

WHEREFORE, Plaintiff demands judgment against Defendant and requests the following injunctive and declaratory relief:

    1.  This Court declare that the Premises owned, operated and/or controlled by Defendant is in violation of the ADA;

2.  This Court enter an Order requiring Defendant to alter the Premises and/or its facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;

3.  This Court enter an Order directing Defendant to evaluate and neutralize its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to the Premises;

4.  This Court award reasonable attorneys' fees, all costs (including, but not limited to the court costs and expert fees) and other expenses of suit to Plaintiff; and

5.  This Court award such other and further relief as it may deem necessary, just and proper.

Dated this 8th day of August, 2019.

Respectfully submitted by:

BY:   /s/ Jason S. Weiss
        Jason S. Weiss
        Jason@jswlawyer.com
        Florida Bar No. 356890
        **WEISS LAW GROUP, P.A.**
        5531 N. University Drive, Suite 103
        Coral Springs, FL 33067
        Tel: (954) 573-2800
        Fax: (954) 573-2798
        *Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:16-cv-61979-ZLOCH

HOWARD COHAN,

     Plaintiff,

vs.

POMPANO NO. 88, INC.
d/b/a MOBIL,

     Defendant(s).

_____/

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

IT IS HEREBY stipulated and agreed by and between Plaintiff, HOWARD COHAN ("Plaintiff"), and Defendant, POMPANO NO. 88, INC. d/b/a MOBIL ("Defendant"), as follows:

**WHEREAS,** Plaintiff filed the above styled action against Defendant for alleged violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §12182, et seq. ("ADA"), pursuant to which Plaintiff seeks injunctive relief as well as attorneys' fees, expert fees, expenses and costs ("Action");

**WHEREAS,** Plaintiff and Defendant ("Parties") have agreed to a settlement of the Action as more particularly set forth in this Settlement Agreement and Release ("Agreement");

**WHEREAS,** Defendant denies any liability or violation of the law as alleged in the Action; and

**WHEREAS,** the Parties desire to avoid further expense, time, effort and uncertainty in regard to the Action;

**NOW THEREFORE,** in consideration of the mutual covenants and undertakings

1



contained herein, and other good and valuable consideration, the Parties agree to the following terms and conditions as full and complete settlement of the Action:

1. **Modifications.** Defendant shall, within six (6) months of the date of this Agreement ("Modification Deadline"), make the modifications to the property located at 880 S. Federal Highway, Pompano Beach, Florida 33062 ("Premises") in accordance with the Survey Report attached hereto and made a part hereof as Exhibit "1".

If at any point, the mandates of this Paragraph 1 are deemed to be unfeasible or unduly burdensome, Defendant shall provide documentation of same, subject to inspection and confirmation by Plaintiff's expert. The confirmation process as provided for herein shall not subject Defendant to additional expert fees or costs beyond those provided for herein, unless said expert fees or costs arise from the enforcement of this Agreement in a separate proceeding.

Defendant shall provide written notice to Plaintiff's counsel upon completion of the modifications as outlined in Paragraph 1 of this Agreement. Plaintiff shall be permitted to request photographs of the modifications for view by Plaintiff's expert and Defendant shall provide those photographs within thirty (30) days of the request. If Plaintiff chooses to inspect the Property Plaintiff's counsel, expert(s) and/or representative(s) shall be provided reasonable access to the Property to conduct an inspection to verify completion of the work required by this agreement. Plaintiff agrees not to interfere with or interrupt Defendant's operations while inspecting the Property. Plaintiff's re-inspection shall be at Plaintiff's sole expense, Plaintiff shall not be entitled to compensation or reimbursement from Defendant in connection with such re-inspection except in a subsequent action to enforce this Agreement as set forth herein.

In the event Defendant has not complied with the mandates of this paragraph 1, Plaintiff's Expert will provide Notice of non-compliance in writing to Defendant's Counsel,

2

Edward S. Polk, Esq., at his email address of Edward.Polk@csklegal.com giving Defendant an additional sixty (60) days to cure, subject to a re-inspection.

2. **Release.**    In exchange for the good and valuable consideration set forth herein the sufficiency of which is hereby acknowledged, the parties hereto mutually release each other, or through their corporate capacity, agents, employees, family members, partners, successors, assigns, and heirs, along with anyone claiming by or through them, jointly and severally (collectively the "Releasing Parties") hereby release, acquit, satisfy and discharge the other, to the extent and exclusively as to the subject facility only and along with any and all of their predecessors, agents, employees, assigns, heirs, officers, directors, shareholders, members, affiliated entities, and any entity or person related to them, jointly and severally, (hereinafter the "Released Parties") from any and all claims, demands, liabilities, debts, judgments, damages, expenses, actions, causes of action or suits of any kind which the Releasing Parties may have, may have had, or may hereafter raise against the Released Parties with respect to the Premises and the Action arising under Title III of the ADA including all claims by the Releasing Parties for attorneys' fees and costs, expert fees, litigation expenses, or any other amount, fee, and/or cost, with the exception of the attorneys' fees and costs required to be paid by Defendant pursuant to Paragraph 3 of this Agreement. Plaintiff reserves the right to pursue all appropriate remedies should Defendant fail to comply within six (6) months with the mandates of Paragraph 1 of this Agreement.

3. **Attorneys' Fees, Costs, Expenses, and all other Amount due by Defendant.** Defendant has agreed to pay and Plaintiff has agreed to accept the total sum of Three Thousand Eight Hundred Fifty Dollars ($3,850.00), which shall be paid within ten (20) days of Defendant's counsel, Edward S. Polk, Esq., receiving a copy of this Agreement executed by Plaintiff at his

3

email address of Edward.Polk@csklegal.com, and a W-9 for Plaintiff's law firm and Plaintiff's SSN. Plaintiff understands and agrees that the Plaintiff, Howard Cohan (SSN will be provided by Plaintiff through secure means) will be receiving an IRS form 1099, and that Weiss Law Group, P.A. will also receive a form 1099. This amount is inclusive of all Plaintiff's attorney fees, court costs and related expenses, as well as specific reimbursement of expert fees. All payments shall be made payable to Weiss Law Group, P.A. Trust Account and be submitted to Jason S. Weiss, Esq. at 5531 N. University Drive, Suite #103, Coral Springs, Florida 33067. Plaintiff's counsel further acknowledges that Plaintiff, Plaintiff's counsel, and their respective consultants, experts, and any similar person or entity are not entitled to any other amounts whatsoever from the Released Parties in connection with the Action and/or settlement of same up to this date in time.

4. **Confidentiality.**     The Parties warrant that all the provisions of this Agreement will remain in strict confidence, except where disclosure is required by applicable law, court order or subpoena compelling disclosure.     The Parties agree to refrain from making any statements about the Action, the allegations contained therein, or this Agreement.

5. **Non-Disparagement and Statements Permitted**. The Parties agree not to defame or disparage each other in any manner. In any communication to third parties regarding the Action or this Agreement, the Parties will limit their communications to a statement that says that the Action has been resolved by mutual agreement of the parties and that the terms of the Agreement are confidential.

6. **Invalidation.**     If any provision of this Agreement is invalidated by a Court of competent jurisdiction, then all of the remaining provisions of this Agreement shall remain in full force and effect, provided that the Parties may still effectively realize the complete benefit of the promises and considerations conferred hereby.

4

7.  **Drafting.**   The Parties acknowledge that Plaintiff and Defendant were able to draft, review and revise this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed against any of the Parties in the interpretation of this Agreement.

8.  **Entire Agreement.**   This Agreement constitutes the entire agreement between the Parties hereto with respect to the matters set forth herein and supersedes in its entirety any and all agreements or communications, whether written or oral, previously made in connection with the matter herein.  Any agreement to amend or modify the terms and conditions of this Agreement must be in writing and executed by the Parties hereto.

9.  **Non-Admission of Liability.**   Neither this Agreement nor anything contained herein shall constitute or is to be construed as an admission by Defendant, the Released Parties, or by any officials, contractors or agents of Defendant or the Released Party of a violation of any federal, state or local statute, any state or municipal fire safety or building code, or as evidence of any other liability, wrongdoing, or unlawful conduct. The Parties acknowledge that this Agreement has been entered into by the Parties to avoid the costs and expenses of continued litigation and to settle disputed claims.

10. **Dismissal.**  Within ten (10) business days of the date this Agreement is fully executed, Plaintiff shall file a Notice of or Stipulation for Dismissal dismissing the Action with prejudice. The Parties further agree that this Agreement shall not be filed with the Court, except as necessary for enforcement purposes, or unless otherwise required by the Court.

11. **Governing Law.**   This Agreement shall be governed by and construed in accordance with the laws of the state of Florida and, where applicable, the ADA without regard to principles of conflicts of law and any suit arising as a result of a breach of this Agreement

5

shall be filed in the Federal Court for the United State District Court for the Southern District of Florida or in Broward County, Florida.

12. **Counterparts**. The Parties agree that this Agreement and any and all other documents in connection with settlement of this matter may be executed in exact counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument. Any signature page delivered by facsimile transmission or e-mail shall be treated in all manner and respects as an original document. Electronic signatures shall be treated as original signatures.

13. **Attorneys' Fees**. Should either party to this Agreement institute litigation related to this Agreement or the parties' performance hereunder, the prevailing party in such litigation shall be entitled to recover its reasonable attorney's fees and costs, both at the trial and appellate level.

14. **Construction.** The headings and captions of this Agreement are provided for convenience only and are intended to have no effect in construing or interpreting this Agreement. The language in all parts of this Agreement shall be in all cases construed according to its fair meaning and not strictly for or against either party.

15. **Purpose of Agreement.** It is expressly understood and agreed by the Parties that this Agreement is being entered into solely for the purpose of avoiding the costs, expense and inconvenience of further litigation and this Agreement is not to be construed as an admission of liability on the part of any person, firm, or corporation being released, such liability being expressly denied.

16. **Warranty of Capacity to Enter into this Agreement**. Each of the Parties represents and warrants that no other person or entity has any interest to the claims, demands, or

obligations referred to in this Agreement, and that each party has the sole right and exclusive authority to execute this Agreement, and that each party has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands or obligations released or referred to in this Agreement.

IN WITNESS WHEREOF, the Parties hereto execute this Agreement.

_____      Date____1|3|2017_____

By: HOWARD COHAN


_____      Date_____

By:

On Behalf of POMPANO NO. 88, INC.

d/b/a MOBIL

7

obligations referred to in this Agreement, and that each party has the sole right and exclusive authority to execute this Agreement, and that each party has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands or obligations released or referred to in this Agreement.

IN WITNESS WHEREOF, the Parties hereto execute this Agreement.

_____          Date_____
By: HOWARD COHAN


_____          Date_ 01/06/2017 _____
By:
On Behalf of POMPANO NO. 88, INC.
d/b/a MOBIL

7

**Facility: Pompano No. 88 -**

**Report No.**

| Line | Facility | Address | Fl. | Room No. Name | Yr. Blt Yr. Re | Item No. | Issue | ADAAG Code |
|------|----------|---------|-----|---------------|----------------|----------|-------|------------|
| 0001 | Pompano No. 88 - | 880 S Federal Highway | 1st | Unisex Restroom | N/A | 0001 | Permanent room identifying signage does not have Braille or raised characters and is mounted on the door leaf. | §703.4.1 |
| | | | | | | 0002 | Non-compliant knob-type door hardware, requiring grasping and turning of the wrist to operate. | §404.2.7 |

Attorney-Client Privilege and Confidential Work Product
Copyright © ADAAG Consulting Services, LLC. 2016.

Wednesday, November 02, 2016 Draft

Facility: Pompano No. 88 -                                                                                    Report No.

| Line | Facility | Address | Fl. | Room No. Name | Yr. Blt Yr. Re | Item No. | Issue | ADAAG Code |
|------|----------|---------|-----|---------------|----------------|----------|-------|------------|
| | | | | | | 0003 | Door has a non-compliant opening force of 10 lbf. | §404.2.9 |
| | | | | | | 0004 | Lavatory mirror is mounted at 47.75" (1213 mm) above the finished floor to bottom edge of its reflecting surface. | §603.3 |
| | | | | | | 0005 | Lavatory has unwrapped bottom sink pipes. | §606.5 |

Attorney-Client Privilege and Confidential Work Product
Copyright © ADAAG Consulting Services, LLC. 2016.   Wednesday, November 02, 2016 Draft

**Facility: Pompano No. 88 -**                                                      Report No.

| Line | Facility | Address | Fl. | Room No. Name | Yr. Blt Yr. Re | Item No. | Issue | ADAAG Code |
|------|----------|---------|-----|---------------|----------------|----------|-------|------------|
| | | | | | | 0007 | Water closet rear wall grab bar is mounted at a compliant height of 35.5" (902 mm) above the finished floor to the top of the gripping surface. | §604.5.2 |
| | | | | | | 0008 | Water closet has a compliant 36" (914 mm) long rear wall grab bar. | §604.5.2 |
| | | | | | | 0009 | Water closet has the rear wall grab bar mounted at a compliant distance of 39.5" (1003 mm) perpendicular from side wall to centerline of outer flange. | §604.5.2 |
| | | | | | | 0010 | Water closet flush control is toward the wall side. | §604.6 |

Attorney-Client Privilege and Confidential Work Product
Copyright © ADAAG Consulting Services, LLC. 2016.

Wednesday, November 02, 2016 Draft

**Facility: Pompano No. 88 -**                                                                 **Report No.**

| Line | Facility | Address | Fl. | Room No. Name | Yr. Blt Yr. Re | Item No. | Issue | ADAAG Code |
|------|----------|---------|-----|---------------|----------------|----------|-------|------------|
|      |          |         |     |               |                | 0011 | Water closet side wall grab bar is mounted at a compliant height of 35.25" (895 mm) above the finished floor to the top of the gripping surface. | §604.5.1 |
|      |          |         |     |               |                | 0012 | Water closet has a compliant 42" (1067 mm) long side wall grab bar. | §604.5.1 |
|      |          |         |     |               |                | 0013 | Water closet side wall grab bar is mounted at a non-compliant distance of 48" (1219 mm) perpendicular from rear wall to centerline of its outer flange. | §604.5.1 |
|      |          |         |     |               |                | 0014 | Toilet tissue dispenser is mounted at a non-compliant height of 6" (152 mm) over the side wall grab bar. | §609.3 |

Attorney-Client Privilege and Confidential Work Product
Copyright © ADAAG Consulting Services, LLC. 2016.   Wednesday, November 02, 2016 Draft

**Facility: Pompano No. 88 -**                                                    **Report No.**

| Line | Facility | Address | Fl. | Room No. Name | Yr. Blt Yr. Re | Item No. | Issue | ADAAG Code |
|------|----------|---------|-----|---------------|----------------|----------|-------|------------|
|  |  |  |  |  |  | 0015 | Toilet tissue dispenser is mounted at a non-compliant distance of 11" (279 mm) in front of the water closet to the centerline of the dispenser. | §604.7 |
|  |  |  |  |  |  | 0016 | Water closet is centered at a non-compliant distance of 18.5" (470 mm) from side wall. | §604.2 |
| 0009 | Pompano No. 88 - | 880 S Federal Highway | Grade | Accessible Parking Space | N/A | 0031 | Accessible parking space and access aisle have compliant surface slopes, dimensions, wheel stops, signs. | §502.4 |

   Attorney-Client Privilege and Confidential Work Product
Copyright © ADAAG Consulting Services, LLC. 2016.   Wednesday, November 02, 2016 Draft

**Facility: Pompano No. 88 -**                                                                                     Report No.

| Proposed Correction / Agreement | Photo | Plaintiff's Complaint | Comments | |
|---|---|---|---|---|
| Provide signage on latch side with raised characters and grade 2 Braille, mounted at 48 inches min. measured from the baseline of the lowest tactile character and 60 inches max. from the baseline of the highest tactile character (2010 ADA Fig. 703.4.1). | 0812 | 22i) Failing to provide proper signage for an accessible restroom or failure to redirect a person with a disability to the closest available accessible restroom facility in violation of 2010 ADAAG 216, 216.2, 216.6, 216.8, 603, 703, 703.1, 703.2, 703.5 and 703.7.2.1 and/or 4.30.1 of the 1991 standards. | | |
| Replace or retrofit with system operable with one hand, not requiring pinching, tight grasping or turning of the wrist to operate. | 0812 | 22b) Failing to provide operable parts that are functional or are in the proper reach ranges as required for a person with a disability in violation of 2010 ADAAG 309, 309.1, 309.3 and 309.4 and/or 4.27, 4.27.3 and 4.27.4 of the 1991 ADA Standards. | | |

Attorney-Client Privilege and Confidential Work Product
Copyright © ADAAG Consulting Services, LLC. 2016.            Wednesday, November 02, 2016 Draft

Facility: Pompano No. 88 -                                                                                                              Report No.

| Proposed Correction / Agreement | Photo | Plaintiff's Complaint | Comments | |
|---|---|---|---|---|
| Adjust or replace door closer, maintain door hinges to provide an opening force not to exceed 5 lbf. | 0812 | 22a) Providing a gate or door with a continuous opening pressure of grater than 5lbs. Exceeding the limits for a person with disability in violation of 2010 ADAAG 404, 404.1, 404.2, 404.2.9 and 309.4 and/or 4.13.11 of the 1991 Adam Standards. | | |
| Lower lavatory mirror to 40" (1016 mm) max. above the finished floor to bottom edge of its reflecting surface. | 0813 | 22f) Failure to provide mirror(s) located above lavatories or countertops at the proper height above the finished floor in violation of 2010 ADAAG 603 and 603.3 and/or 4.19, and 4.19.6 of the 1991 ADA Standards. | | |
| Cover (insulate) lavatory bottom supply and drain pipes or reconfigure to protect against contact. | 0813 | 22c) Failing to provide the proper insulation or protection for the plumbing under a sink or countertop in violation of 2010 ADAAG 606 and 605.5 and/or 4.24.6 of the 1991 ADA Standards. | | |

Attorney-Client Privilege and Confidential Work Product
Copyright © ADAAG Consulting Services, LLC. 2016.

Wednesday, November 02, 2016 Draft

**Facility: Pompano No. 88 -**                                                                                                     **Report No.**

| Proposed Correction / Agreement | Photo | Plaintiff's Complaint | Comments | |
|---|---|---|---|---|
| No remedial work is necessary. | 0815, 0816 | 22d) Failing to provide grab bar(s) in violation of 2010 ADAAG 604, 604.5, 609 and 609.4 and/or 4.26 and 4.26.1 of the 1991 ADA Standards. | Water closet rear wall grab bar is mounted at a compliant height of 35.5" (902 mm) above the finished floor to the top of the gripping surface. | Water closet rear wall grab bar is mounted at a compliant height of 35.5" (902 mm) above the finished floor to the top of the gripping surface. |
| No remedial work is necessary. | 0815, 0816 | 22d) Failing to provide grab bar(s) in violation of 2010 ADAAG 604, 604.5, 609 and 609.4 and/or 4.26 and 4.26.1 of the 1991 ADA Standards. | Water closet has a compliant 36" (914 mm) long rear wall grab bar. | Water closet has a compliant 36" (914 mm) long rear wall grab bar. |
| No remedial work is necessary. | 0817 | 22d) Failing to provide grab bar(s) in violation of 2010 ADAAG 604, 604.5, 609 and 609.4 and/or 4.26 and 4.26.1 of the 1991 ADA Standards. | Water closet has the rear wall grab bar mounted at a compliant distance of 39.5" (1003 mm) perpendicular from side wall to centerline of outer flange. | Water closet has the rear wall grab bar mounted at a compliant distance of 39.5" (1003 mm) perpendicular from side wall to centerline of outer flange. |
| Rotate water closet flush control toward the open side or install an electronically controlled mechanism. | 0818 | 22h) Failing to provide the flush controls on the open side of the water closet in violation of 2010 ADAAG 604, 604.6, 604.8.2 and 604.9.5 and/or4.18.4 and 4.16.5 of the 1991 Standards | | |

Attorney-Client Privilege and Confidential Work Product
Copyright © ADAAG Consulting Services, LLC. 2016.                                Wednesday, November 02, 2016 Draft

**Facility: Pompano No. 88 -**                                                                    Report No.

| Proposed Correction / Agreement | Photo | Plaintiff's Complaint | Comments | |
|---|---|---|---|---|
| No remedial work is necessary. | 0819 | 22d) Failing to provide grab bar(s) in violation of 2010 ADAAG 604, 604.5, 609 and 609.4 and/or 4.26 and 4.26.1 of the 1991 ADA Standards. | Water closet side wall grab bar is mounted at a compliant distance of 35.25" (895 mm) above the finished floor to the top of the gripping surface. | Water closet side wall grab bar is mounted at a compliant height of 35.25" (895 mm) above the finished floor to the top of the gripping surface. |
| No remedial work is necessary. | 0819 | 22d) Failing to provide grab bar(s) in violation of 2010 ADAAG 604, 604.5, 609 and 609.4 and/or 4.26 and 4.26.1 of the 1991 ADA Standards. | Water closet has a compliant 42" (1067 mm) long side wall grab bar. | Water closet has a compliant 42" (1067 mm) long side wall grab bar. |
| Install a 42" (1066 mm) min. long side wall grab bar at 54" (1371 mm) min. perpendicular from rear wall to centerline of outer flange and mount at 33"- 36" (838 mm - 914 mm) above the finished floor to the top of the gripping surface  (ADAAG Fig. 604.5.1) | 0819 | 22d) Failing to provide grab bar(s) in violation of 2010 ADAAG 604, 604.5, 609 and 609.4 and/or 4.26 and 4.26.1 of the 1991 ADA Standards. | | |
| Relocate toilet tissue dispenser to provide a clear space between the side wall grab bar and projecting objects above of 12" (305 mm) min. (2010 ADA Fig. 609.3). | 0820 | 22e) Failure to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG 604, 604.7 and 309.4 and/or 4.16.6 of the 1991 ADA Standards. | | |

Attorney-Client Privilege and Confidential Work Product
Copyright © ADAAG Consulting Services, LLC. 2016.                Wednesday, November 02, 2016 Draft

**Facility: Pompano No. 88 -**                                                          Report No.

| Proposed Correction / Agreement | Photo | Plaintiff's Complaint | Comments | |
|---|---|---|---|---|
| Relocate toilet tissue dispenser to water closet side wall at 7"-9" (177 mm to 228 mm) in front of the water closet to the centerline of the dispenser and 15"-48" (381 mm to 1219 mm) above the finished floor to the dispenser outlet. | 0820 | 22e) Failure to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG 604, 604.7 and 309.4 and/or 4.16.6 of the 1991 ADA Standards. | | |
| Relocate water closet and center between 16" and 18" (406 mm - 457 mm) from side wall ( 2010 ADA Fig. 604.2). | 0821 | 22g) Failure to provide the water closet in the proper position relative to the side wall or partition in violation of 2010 ADAAG 604 and 604.2 and/or 4.16, 4.17.2 and 4.17.3 of the 1991 ADA Standards. | | |
| No remedial work is necessary. | 0840, 0841, 0842, 0843, 0844, 0845, 0846, 0847, | 23) Defendants is in violation of 2010 ADAAG 208, 502 and/or 503 by allowing vehicles to park in parking spaces in such a fashion wherein physically disabled persons are prevented from being able to use designated handicapped parking spaces. | Accessible parking space and access aisle have compliant surface slopes, dimensions, wheel stops, signs and are clearly outlined as required per 2010 ADA §502 and FACBC Section §502 | |

Attorney-Client Privilege and Confidential Work Product
Copyright © ADAAG Consulting Services, LLC. 2016.                Wednesday, November 02, 2016 Draft

# WEISS LAW GROUP, P.A. | 5531 N. University Drive
Suite 103
Coral Springs, Florida 33067

Jason S. Weiss
954-573-2800 (phone)
954-573-2798 (facsimile)
Jason@jswlawyer.com

### NOTICE OF NON-COMPLIANCE
March 15, 2019

**Sent via Email only**
Pompano No. 88, Inc.
d/b/a Mobil
c/o Edward S. Polk, Esq.
9150 S. Dadeland Blvd, Ste 1400
Miami, FL 33156-7855
edward.polk@csklegal.com

RE:   **Pompano No. 88, Inc. d/b/a Mobil**
     **Notice of Non-Compliance**
     **Our Client: Howard Cohan**

Edward:

  As you are already aware, this office represents Howard Cohan ("Client"), an individual with multiple disabilities as that term is used under the Americans with Disabilities Act ("ADA"). The purpose of this Notice of Non-Compliance ("Notice") is to inform you and your client, Pompano No. 88, Inc. ("Pompano"), that violations of the ADA still exist at the premises located at 880 S. Federal Highway, Pompano Beach, Florida 33062 ("Premises"). As you know, on August 17, 2016, our office initiated a lawsuit against Pompano for violations of the ADA (case number 16-cv-61979-ZLOCH) ("Lawsuit"). On or about January 6, 2017, our Client and Pompano (collectively "Parties") entered into a Confidential Settlement Agreement and Release ("Agreement"). The Agreement provided that in return for our Client dismissing the Lawsuit, all modifications in accordance with the Survey Report attached thereto and made a part of the Agreement as Exhibit "1" would be completed by July 6, 2017. Despite our Client complying with the terms of the Agreement, it has come to our Client's attention that a number of violations that should have been fixed pursuant to the Agreement are still in existence at the Premises.

  During our Client's most recent visit to the Premises, our Client noted the following specific violations of the ADA that, despite the Agreement, had not been rectified.

1



**Unisex Restroom**

   a. Providing a gate or door with a continuous opening pressure of greater than 5 lbs. exceeding the limits for a person with a disability in violation of 2010 ADAAG §§404, 404.1, 404.2, 404.2.9 and 309.4 and/or §4.13.11 of the 1991 ADA Standards.

   b. Failing to provide operable parts that are functional or are in the proper reach ranges as required for a person with a disability (the door gets stuck on the frame when trying to access) in violation of 2010 ADAAG §§309, 309.1, 309.3 and 309.4 and/or §§4.27, 4.27.3 and 4.27.4 of the 1991 ADA Standards.

   c. Providing grab bars of improper horizontal length or spacing on the back or side wall in violation of 2010 ADAAG §§604, 604.5, 604.5.1, 604.5.2, 609 and 609.4 and/or §§4.26 and 4.26.2 of the 1991 ADA Standards.

   d. Failing to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG §§604, 604.7 and 309.4 and/or §4.16.6 of the 1991 ADA Standards.

   e. Failing to provide the water closet in the proper position relative to the side wall or partition in violation of 2010 ADAAG §§604 and 604.2 and/or §§4.16, 4.17.2 and 4.17.3 of the 1991 ADA Standards.

   f. Failing to provide the flush controls on the open side of the water closet in violation of 2010 ADAAG §§604, 604.6, 604.8.2 and 604.9.5 and/or §§4.18.4 and §4.16.5 of the 1991 ADA Standards.

   g. Failing to provide proper signage for an accessible restroom or failure to redirect a person with a disability to the closest available accessible restroom facility (the current sign is too high) in violation of 2010 ADAAG §§216, 216.2, 216.6, 216.8, 703, 703.1, 703.2, 703.5 and 703.7.2.1 and/or §§4.30 and 4.30.1 of the 1991 ADA Standards.

**New Violations[1]**

   a. Failing to provide sufficient clear floor space around a water closet without any obstructing elements in this space (the garbage can) in violation of 2010 ADAAG §§603, 603.2, 603.2.3, 604, 604.3 and 604.3.1 and/or §§4.16, 4.16.2, 4.22 and 4.22.3 of the 1991 ADA Standards.

   b. Failing to provide a coat hook within the proper reach ranges for a person with a disability in violation of 2010 ADAAG §§603, 603.4 and 308 and/or §§4.25.3, 4.2.5 and 4.1.3 of the 1991 ADA Standards.

   c. Failing to provide a doorway or walkway with a minimum clear width for a person with a disability in violation of 2010 ADAAG §§403, 403.5, 403.5.1 and 404.2.3 and/or §§4.13.5 and 4.13.6 of the 1991 ADA Standards.

---

[1] These New Violations may not have been present at the time of the filing of the Complaint and therefore, are not <u>required</u> to be removed per the Agreement. However, as a professional courtesy and an attempt to assist Pompano in bringing the Premises into full compliance with the ADA, we have included ALL of the violations our Client encountered during his most current visit.

Please consider this correspondence as our Client's required sixty (60) day Notice of Non-Compliance ("Notice") with the mandates of paragraph 1 of the Agreement. Pompano shall have <u>sixty (60) days from the date of this Notice</u> to correct the above listed violations. **<u>If our office does not hear from you within the sixty (60) days provided for above, our Client has authorized our office to file a lawsuit for breach of the Agreement in the District Court of the Southern District of Florida wherein our office will seek injunctive relief, attorneys' fees and costs.</u>**

This is a confidential legal notice and may not be published, in whole or in part. Any republishing or dissemination of same, including, but not limited to posting of the contents hereof on the Internet, shall constitute a copyright infringement and will subject the republisher(s) to civil liability for such actions. This Notice is not intended to constitute, nor shall it be deemed to constitute, a full statement of all facts, rights or claims relating to this matter, nor is it intended, nor should it be construed as a waiver, release or relinquishment of any rights or remedies available to our Client, whether legal or equitable, all of which are hereby expressly reserved.

If you have any questions or concerns, please contact our office.

**GOVERN YOURSELF ACCORDINGLY.**

Very truly yours,

Jason S. Weiss

cc: Client

3